PETITION FOR REHEARING.
A strong feeling of disappointed hope; a firm conviction of the just ice and goodness of their cause, with a persuasion that the court have predicated the opinion delivered in this case, upon a mistaken view of important points in the case, must be the apology of the appellant’s counsel for troubling the court with a motion to which ihey feel themselves impelled by the strongest sense of duty. Indeed the review of an opinion involving interests of such importance as the present, if not a pleasing, it is hoped cannot be an irksome, duty with the court.
It will not be forgotten that the entry of Trabue for 1450 acres, the one alluded to by the expression 11 the above entry,” in that of the complainant, when surveyed in conformity with the opinion pronounced therein in the case of Trabue’s heirs and Lockhart’s, on one of its liues intersects Licking, another object called for in the complainant’s entry. This point of intersection is one from which, with the most unerring certainty, a locator or enquirer is furnished with means, for tracing the other objects in each direction for the ascertainment of the area contemplated by the complainant’s entry, and from this point pursuing on the one direction the group of objects described as constituting the area to be occupied by the complainant’s entry, you ascend Licking to the mouth of Gray’s run, and thence you ascend the run, which is another object of description: On the other side of the *414 area and nearly parallel in the general bearing of the objects, you pursue the lines of Trabue until you come to the nearest point of contact with the claim of M’Fall, (likewise established by a former decree of this court) the lines of which claim are naturally and easily pursued until you come to such point on the said pre-emption survey, from which a line dropped either at right angles to that of M’Fall to Gray’s run, or to a line drawn from the lower end of the complainant’s entry, the point of junction first mentioned, to the upper end of the claim, will give the quantity; and this upper or closing line of the survey is the only one which the court are called upon to supply by construction, in directing the mode of surveying the complainant’s claim, In the furnishing the course of which no serious difficulty can occur — in which no effort of ingenuity is required, and in which no choice of difficulties present themselves, as in many other cases have occured, and which have again and again been surmounted. The frequent instances in which this court have not only supplied a closing ljne, (the general figure of a survey having been furnished, as here) but in which they have furnished not only the closing line, but two, three, nay four, the entire area, the' whole lines of a survey by construction, where neither the length or course of one of those lines were given, are too numerous and too various, and must too readily suggest themselves to require the citation or enumeration of them. They are to he found in the ancient, as well as in the modern, decisions of this court.
The cal! in the complainant’s entry for the claim of Benjamin Hatcher, which seemed to the counsel for the appellant to constitute the only seeming obstacle to their success, (if the opinion of the court is correctly understood by them,) is strongly intimated if not in so many terms decided, as one which, of itself alone, ought, not to be fatal to the claim: It being expressly affirmed in the opinion delivered herein, ‘‘that Callaghan’s settlement is so far a“bove fray’s run, that lay the claims in any manner con-formably with their locations, and Hatcher’s will not extend to Gray’s run.” The affirmance of this proposition by the court, it seemed to the counsel for the appellant, was a sufficient, and ought to have been a final, sanction to: the validity of the claim. For it seems to the counsel for the appellant, that the inference afterwards drawn by the court in the opinion, that the call in Hatcher’s entry to lie *415 near the head of Gray’s run, might have been Receptive or embarrassing to enquirers, ought to have no influence in ihis state of the question; for the obvious reason, that as you have discharged “Hatcher’s” as a superfluous, incompatible and inoperative call, and properly and incontrovertibly fixed on Gray’s run, as the limit and boundary of the entry in that quarter; the danger of embarrassment of the enquirer, resulting from this incompatible and superfluous call, which has been rejected by the court in the construction of the entry, cannot be urged in this case, or if it can have any influence here, it should have been equally fatal in every case of á rejected call, as it is difficult to imagine cases of superfluous and incompatible calls, which might not, by possibility, in a greater or less degree, have deceived or embarrassed some enquirer.a As a single illustration of this argument, we would call to the recollection of the court the rejected calls in Mosby’s entry of 20,000 acres, to exclude twenty odd different claims, amounting in the whole to 21,000 acres, and neéd we put the question, How many would have been deceived by this rejected call for one who would have been seriously embarrassed by the impossible call to adjoin uBen. Hatcher,” so entirely incompatible with the call in our entry, to be bounded on our tipper side by Gray’s run, a geographical limit, in its nature immutable, conspicuous, easily found and not to be mistaken? But if the enquirer is presumed, as he must be, to have made himself acquainted with the surrounding objects called for in our entry, and to have ascertained the point of contact between Trabue’s 1450 acre entry and Licking, where is the Herculean difficulty thrown upon him, or from whence is his embarrassment to result; when, from tracing the objects in either direction from this point, he Shall have found himself on the one side On the line of M’Fall’s pre-emption, and on the opposite side of the area, at a point on Gray’s run, opposite to that just alluded to, 'and contiguous thereto, seperated but 2 or 300 poles, and the quantity or compliment oF the entry obtained? Why is he then embarrassed by the call in Hatcher’s entry, “to lie near the head of Gray’s run,'” When the compliment has been obtained by the process just alluded to, in a manner, easy, National, and simple, and the upper or closing line is hscertained, several miles below the head of Gray’s run:
The court, in the opinion delivered, seem not to have decided the preliminary enquiry, ^whether Hatcher’s was a *416 valid claim or susceptible of any precise location: a decision which, it seems to the appellant, was indispensable to the correct decision of the true merits of Trabue’s (the complainant’s) claim. For if susceptible of any precise location, and the entry when thus fixed, came not in contact with Gray’s run, the rejection of that call as an impossible Or incongruous one, seems the inevitable result; or on the contrary, should the court, on a careful investigation, have found it susceptible of no precise location, and therefore wholly invalid and void, it would seem to the counsel that the fairest and best established principles of construction would justify its rejection, in the construction of the complainant’s entry. But to leave the question on the validity of Hatcher’s entry undecided, with the passing ancj inconclusive remark, “that it would be difficult, indeed, to ascertain the precise position of Hatcher, if practicable at all, “to reduce it to precision by any rational and just construction,” seems to the counsel peculiarly unfortunate for the complainant’s claim; as the argument on which they rely, is grounded on the assumption, that the entry is either special and precise, and is located on lands far above Gray’s run, or that it is vague, invalid, is located no where, and therefore cannot invalidate the other calls of their claim. Whereas, by permitting the claim to remain hungup in dubio, as a thing or “nothing,” to embarrass and deceive locators; an argument, (as the counsel deem,) not well founded, is furnished against their claim. It is still perfectly correct, that if the conclusion to which the court seem to have arrived in the latter part of their opinion, viz. that passing by this impossible call, the entry is still, after the rejection of the call for “Hatcher,” too vague, on account of the too ample scope furnished by the other calls, the claim is not entitled to the sanction of this court. But if, by the process first alluded to in this petition, the enquirer would have been easily and certainly conducted to the points on M’Falls pre-emption line and on Gray’s run, at which, by a rational and simple mode of closing the only open line of this survey, the precise location for the exact quantity located might have been ascertained, it is respectfully contended, that the entry in question ought to have been sustained. It is respectfully suggested that the court, in arriving at the conclusion above alluded too, seem to have been led into a mistaken supposition, that Mill Creek, as well as Licking, Gray's run, Trabue’s 1450 acre *417 entry, Hatcher and M’Fall had been called for as one of the surrounding objects by which the area of the claim was to be constituted. Whether a correction of this error, into which the court have been inadvertently led, or any thing suggested in this petition^ will be deemed of sufficient importance to authorise the rehearing, respectfully solicited, is for them to decide.
TALBOT, POPE & BIBB.
But the court at a subsequent day of the term, Overruled the petition, and ordered the foregoing Opinion to stand unaltered and affirmed.

 Hard. Rep. pa. 383, Craig & al. vs. Cogar.